Emmanuel Enyinwa, Esq.
Law Office of Emmanuel Enyinwa

807 Montgomery Street

San Francisco, CA. 94133

415-956-6100

Fax: 415-956-6111

Email: Enyinwalaw@sbcglobal.net

# UNITED STATES DISTRICT COURT
# FOR NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| Ake Peter Gerhard SVENSBORN and Lisa Ulrika NORGREN ) | Case No:   C-07-5003 TEH |
| ) | Hearing Date: November 5, 2007 |
| ) | Time:         10:00 AM. |
| Petitioners, ) | Hon:          Thelton Henderson |
| ) | |
| v. ) | |
| ) | |
| ) | |
| Peter Kiesler, Actg Attorney General of the ) | |
| United States; Michael Chertoff, Head of the ) | |
| Department of Homeland Security; ) | |
| Condoleeza Rice, Secretary of State; ) | |
| Gottlieb Duwan, Vice Consul, United States ) | |
| Embassy in Stockholm, Sweeden ) | |
| _____ ) | |

**PETITIONERS'S RESPONSE TO RESPONDENT'S OBJECTION**

Petitioners, through undersigned counsel, hereby respond to Respondent's objection to the

Order of this Court. As an initial matter, Petitioners note that Respondent has moved to dismiss Respondents Peter Kiesler and Michael Chertoff. Petitioner does not object to their dismissals as defendants in this case, as Respondents rightfully point out that neither man has any jurisdiction over a visa application pending outside the United States. That falls under the jurisdiction of the Department of State and its secretary Condoleeza Rice, and the consular officer Gottlieb Duwon, two defendants who rightfully remain in the case.

And, Petitioners also concede that Petitioner Norgren is not seeking adjustment of status, but a visa issuance. Even though this distinction has absolutely nothing to do with the action before this Court, as Petitioners only seek through the writ of mandamus to compel *adjudication* of the applications before the agency, and not the approval thereof. The rest of Respondent's arguments, alas, break no new ground and is simply a rehashing of the same arguments that failed to persuade the Court on the day of the hearing on the writ. If anything, by proving that there is no other extant authority on which it can couch its arguments more persuasively, Respondent validate the propriety of the Order itself. For that reason, the Court should leave the Order undisturbed.

Finally, it is not altogether insignificant that the Order of the Court has already accomplished that which it set out to do—compel actual adjudication of the petition. One week after the issuance of the Court's Order, Petitioner's counsel was contacted by an investigator from the Department of Homeland Security, John Bartusevic, who scheduled a home visit at Petitioners home in Belmont, California. There, on Wednesday, October 9, 2007, Agent Bartusevic and another agent interviewed Petitioner for about an hour regarding his marriage, the intent of the parties to live together in the future, and the course of their relationship. The officers then proceded to inspect the house where they found pictures of Petitioners, Petitioner Norgren's clothes and cosmetics in the bathroom, and other indicia of their relationship. At the close of the interview, Agent Bartusevic was asked if he needed more documents, to which he responded that it would be nice to get some pictures of the couple before

they got married, pictures which documented their relationship over the several years they knew each other.

On the very same day, Petitioner Norgren emailed several pictures from Sweden, and on the very next day, October 10, 2007, counsel for Petitioners forwarded these pictures to Agent Bartusevic. Counsel then confirmed by telephone that the agent received these pictures. The agent responded that he had forwarded his investigation along with the pictures to the Swedish consul, and that it was no longer in his hands. Several emails have been sent to the consul asking if they needed further documents. No replies have been forthcoming from the consul.

**BACKGROUND**

Mr. Svensborn learned that he had "won" the DV2007 diversity lottery in late May 2006. The diversity visa lottery program provides that 50,000 visas will be distributed to countries with low US immigration, in order to "diversify" the immigration into the US. However, the program requires that the visa be issued during a particular fiscal year. It is *not* possible to immigrate after the end of the fiscal year in which one has been selected. So, the visas must be issued no later than midnight on September 30, 2007.

Mr. Svensborn was an F1 nonimmigrant student in the United States when he had been selected for the DV2007 program. His longtime Swedish girlfriend of 6+ years, Lisa Norgren, was visiting him in the US, having arrived in April 2006 as a visitor. Both of them were 31 years old and realized they needed to decide their future. After careful consideration they decided they wanted to remain together in the U.S. They planned a destination wedding in Las Vegas in September 2006. Ms. Norgren stayed in the US with her husband until December 2006, when she left to prepare for immigrant visa processing through the US embassy in Stockholm. Her husband, Mr. Svensborn, remained in the US to complete his US studies, and to process for an immigrant visa in the US. He did process for his visa in

the US, and became a lawful permanent resident on May 10, 2007. He was in the F1 status prior to that time, thus he was allowed him to adjust while in the US. His wife, on the other hand, was in the US as a visitor and could not adjust status in the US, but rather only through the US embassy in Stockholm.

After considerable delays caused by various government agencies, Ms. Norgren attended an immigrant visa interview at the US embassy in Stockholm on August 16, 2007. On that date the embassy requested extra documentation (wedding photos, lease with spouse, updated Swedish tax agency status)-all of which she provided in less than one week. The consul continued to delay and finally, on September 7, 2007, the Petitioners learned that the consulate wished to interview Ms. Norgren's husband and father. They immediately arranged for those to take place- and they did take place the week of September 10, 2007. Petitioners have been requesting a decision on a daily basis since that time. After 5 full business days passed, they finally received an email from the Vice Consul stating that the visa cannot be processed for administrative processing purposes.

Ms. Norgren had submitted all of the necessary papers, and clearly qualified as a derivative spouse. The embassy continued delaying issuance of the visa without an articulated reason, despite almost daily emails to the embassy. Finally, on Wednesday, September 26, 2007, Petitioner's counsel received the following email from the vice consul:

"I am not in a position to elaborate on the details of the remaining administrative processing. However, as you are well aware, the issuance of immigrant visas, including diversity visas, involves coordination among multiple U.S. Government agencies. Embassy Stockholm cannot adjudicate this visa until administrative processing by all federal agencies involved in the case has been completed. The Embassy is therefore also not in a position to accelerate adjudication meet a deadline." (Exhibit 1A to the original Petition.)

**PROCEEDINGS BEFORE THIS COURT**

The very same day, Petitioners contacted undersigned counsel who promptly prepared a Petition for a Writ of Mandamus on their behalf. This petition was filed the next day, Thursday, September 27, 2007, and heard by this Court on Friday, September 28, 2007.

At that hearing, Respondent at first argued that there had been a final decision on the visa application based on a Section 221(g) letter issued by the Swedish consul on August 16, 2007, arguing that an adjudication under INA Section 221(g) was a "final" decision triggering the doctrine of consular non-reviewability. However, Respondent finally conceded that a 221(g) denial was not "final", especially in light of the fact that the consul was still actively adjudicating the visa application as late as September, 2007.

Respondents apparently are trying to resurrect that argument, and in fact, citing no authority for the proposition that a 221(g) denial is a "final" decision, then proceeds to base the bulk of its legal arguments on the *assumption* that it in fact is. Based on the Court's incredulity that the agency charged with adjudicating Petitioner's benefit would use its own inability to complete the adjudication of that benefit within the deadline given to it by Congress as an offensive weapon against the person to whom it owed that duty, and that the agency would *oppose* an attempt to grant it more time to actually finish its job, the Court issued the mandamus on September 28, 2007.

In the Order, the Court indicated that while it appeared impractical that Respondent could finish adjudication of the visa by the deadline of September 30, 2007, the Court was following the practice of *several* District Courts in issuing the Order anyway, and allowing the agency to continue adjudication of the visa past the deadline. The Court then, acknowledging the fact that everything was done very hastily, allowed Respondents an opportunity to attempt to convince the Court that the Order was wrong.

ARGUMENT

Respondents first attempt to resurrect the argument that was so discredited at the original hearing that Respondents abandoned it—that an INA Section 221(g) letter constitutes a "final adjudication" of the visa petition. Respondents begin the sally thus: "Petitioner asserts that the Court has jurisdiction under 28 U.S.C. § 1331, the federal question statute. Under this statute, a federal court has subject matter jurisdiction where (1) the claim turns on an interpretation of the laws or Constitution of the United States, and (2) the claim is not "patently without merit." *Saleh v. Ridge*, 367 F. Supp. 2d 508, 511 (S.D.N.Y. 2005). Here, the Petition fails on the second prong." Pet Br. P. 4, lines 22-27.

This argument is simply disingenuous, for no reasonable construction of the facts of this case would lead to the conclusion that Petitioners's petition before this Court is "patently without merit", certainly not under the facts of this case, and certainly not based on a pretty widely accepted practice by several Federal Courts to use this statute to issue writs of mandamus in cases like this. For the Court to buy this argument, it has to determine that the entire proceedings before It is "patently without merit", and that the Order It issued in this case was based on an argument that was "patently without merit". This argument skates on razor-thin ice. Respondents attempt to obfuscate matters by repeatedly referring to the consul's unfettered authority to issue or deny visas, even on a whim. While there is an argument whether the consul can legally issue decisions contrary to the constitution and evade ***any and all*** judicial oversight based on a legally created "doctrine", that question is not before this Court. The ***sole*** relief Petitioners seek before this Court is adjudication of Lisa Norgren's visa application. This is clearly, clearly not a "discretionary" act by the consul, but an absolute nondiscretionary duty owed Petitioners.

Respondents' second argument is simply an attempt to resurrect an argument that they had retreated from on the date of the writ hearing, that a Section 221(g) decision is a "final" decision for purposes of triggering the vaunted "doctrine of consular non-reviewability". To support this position, however,

Respondents cite to *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997), a case that reaches the exact opposite conclusion. In fact, Patel is noteworthy for saying why a 221(g) denial is **not** final. Respondents attempt to get around this by pointing out irrelevantly that "what happened" in Patel has been discontinued without addressing the central question of whether in fact the Patel court held that a 221(g) denial was in fact a final decision.

This question is answered by the procedures of the consuls themselves. As Petitioner pointed out at the original hearing, just about every embassy treats a 221(g) letter not as a final decision on the merits of the application, but an invitation to submit further documentation, not unlike Officer Bartusevic's request that Petitioners submit additional photograps. Clearly, what Officer Bartusevic did could not be reasonably construed as a final decision on the petition. Respondent points to no embassy whose 221(g) letters signify the end of the adjudication of the visa. The US embassy in Lima, Peru does not. It states as follows:

"Some cases are refused under section 221(g) of the INA and requested to return with additional information to assist in the adjudication. Persons refused under section 221(g) of the INA will be given a form letter explaining what additional information is needed and when to reappear before the consular officer. These applicants do not have to pay another application fee and may return with the requested information as specified on the form letter." http://lima.usembassy.gov/visa_denials.html.

Neither does the US Embassy in New Delhi, India similarly states as follows:

"Refusals 221(g)

Applicants are *ineligible under section 221(g)* because the applicant failed to bring some information or document, *or* some further procedure or review by us or another U.S. government agency must be completed." http://newdelhi.usembassy.gov/visarefus221g.html

The US embassy in Manilla, The Phillippines goes one step further and properly identifies the 221(g)

situation as a *temporary* refusal.

**"221(g) Temporary Refusal**

If, at the conclusion of the your nonimmigrant visa interview, you were given a sheet of paper called a 221(g) letter by the consular officer requesting that you return to the Embassy for some reason (to bring additional documents, to provide a new passport, for administrative processing, etc), please read the letter carefully.

If you have been requested to return for any reason other than administrative processing, you must set a new appointment by calling 1-909-101-7878. Applicants should indicate to call center personnel that they are scheduling a 221(g) appointment.

If the next available 221(g) appointment is too late for your trip, you must book the next available appointment anyway and obtain a booking reference number. You may then request an earlier appointment. If you are a seafarer, your recruitment agency may choose to substitute your interview for that of another applicant.

Only those who were given the letter for administrative processing are exempted from this new appointment requirement. If you were temporarily refused pending administrative processing, we will contact you with your new interview date."

http://usembassy.state.gov/manila/wwwhni27.html

     In short, Respondents' issuance of the Section 221(g) letter was simply not a "final" decision on Petitioner Norgren's visa application. Because of that, the rest of Respondents' arguments predicated on acceptance of this proposition are patently without merit, so to speak.

**EQUITABLE TOLLING**

     Respondents also argue generally that this Court should not "equitably toll" the Sepetember 30,

2007 deadline for the adjudication of diversity visas. Respondents state as follows: "Controlling precedent states that courts may not apply equitable tolling to the statutory DV deadline. *See* Carillo-Gonzalez, 353 F.3d at 1079. In Carillo-Gonzalez, the court noted the impropriety of applying equitable tolling to the statutory deadline when the plaintiff claimed she was defrauded by a notary during the process of completing an adjustment application. *Id*. at 1079. Specifically, the Ninth Circuit declared, "[w]e hold that the doctrine of equitable tolling has no application in cases involving the Congressionally-mandated, one-year deadline of the DV Lottery Program." *Id*. Thus, the Court cannot toll the deadline set by Congress." Pet. Br. p. 8, lns. 17-23.

This is the only argument that Respondents have that has some merit. Unfortunately, for Respondents—or, rather, fortunately for them, since they are being put in a position to finish the job they began—this is an equitable argument, and one that they have already failed to persuade the Court with. As the Court asked repeatedly on the date of the hearing on the writ of mandamus, "what do you want me to do, just throw my hands up in the air and say 'too bad'"? Sadly, this appears to be the Respondents' position. Respondents care not one whit about any commandments from Congress, apparently, or they would have adjudicated the petition before the deadline. After all, this was the mandate Congress gave them. They had 100% of the power in their hands to adjudicate this petition before the deadline. To the extent that they claim there was more to be done, they had between September 7, 2007 till September 30, 2007 to finish that job. If they cared about any Congressional mandates, they would have made the case a priority rather than simply telling Petitioner that they do not intend to accelerate any processing to "meet a deadline", as the vice-consul stated, supra.

The truth of the matter is that Respondents know that coming before this Court is the only arrow in Petitioners' bow that could have done anything to stop Respondents from improperly using the deadline as a de facto denial of Petitioner Lisa Norgren's visa application. As the court in Gebre v. Rice, 462 F. Supp. 2d 186 (D. Mass. 2006)stated, "Paunescu, Kobzev and Przhebelskaya demonstrate

the best means for diversity visa applicants to force the Government to adjudicate their applications before the fiscal year is out." 462 F. Supp. 2d 186, 195. [internal citations omitted.] This is the practice across the country, and the Court was merely acquiescing in this wide practice.

Once again, Respondents base their entire reliance on their insistence that a Section 221(g) denial is a final denial, then attempt to cast what is happening here as an attempt to "equitably toll" the September 30, 2007 deadline. That is simply not the case, and Gebre as this Court directed Respondents to complete the adjudication before the deadline, and stated in no uncertain terms that a failure to do so was a contempt of this Court. So, rather than equitably tolling the deadline, this Court is merely seeking the enforcement of its pre-deadline Order.

Respondents argue that the timing of this petition cut too close to the deadline, but that argument is disingenuous as well, as it was Respondents who sat on the petition between September 12 and September 26. The last email from the vice consul came on September 26, 2007. On the same day, Petitioners found counsel, who prepare their petition before this Court and filed it the next day. The Court then promptly heard the case on Friday, September 26, 2007. Given the amount of hustle put up by so many people because of their awareness of the finality of that September 30 deadline, it is somewhat rich for Respondents who had the most amount of time to save so many people all this trouble to argue that Petitioners cut it too close to the bone. In any event, Respondents also ignore the salient fact that *none* of the cases in which the Federal Courts issued a writ of mandate did the consul adjudicate the petition before September 30. So, the fact that this case will be decided after the deadline pursuant to this Court's Order is rather commonplace.

In any event, the consul knew there was a pending petition to compel it to adjudicate this visa application as early as Thursday, September 27, 2007. After Petitioners filed their petition, counsel for petitioner served the United States attorney's office, then spoke extensively with Respondents' counsel. Petitioner's counsel forwarded to Respondents' counsel all the phone numbers in his possession to

contact the vice consul, including his direct number. Respondents' counsel, Melanie Proctor advised Petitioner's counsel that she did indeed contact the Swedish embassy, and that the Swedish embassy forwarded to her a printout that indicated it had already adjudicated the petition on August 16, 2007. While this is apparently a mistake of law on the consul's part, it nonetheless demonstrates that the consul should at least have been curious as to the outcome of the proceedings before this Court, since they had the potential to at least place the consul in contempt of this Court. Again, this is an equitable argument, and equity simply is not on Respondents' side in a situation like this, not with Petitioners poised to lose so much.

At the hearing on the writ, Respondents suggested that Petitioner Svensborn file an I-130 petition for his wife, and the Court wondered how long such a petition would take to bring her to the United States. Petitioner Norgren, as a spouse of a legal permanent resident, falls under Family Preference category 2A. According to the latest visa bulletin, http://travel.state.gov/visa/frvi/bulletin/bulletin_3827.html, the agency is adjudicating visa petitions filed on December 15, 2002. Even though a five year delay might seem a daunting period to wait for someone who clearly qualifies for an alternate means of immigrating, it bears pointing out that that date does not move with the calendar month. It is more common for the bulletin to say stuck on the same month for a whole year, depending on how many immigrants from a particular region immigrate during the fiscal year. In fact, on occasion, the visa bulletin even rolls backwards. And, even when that visa becomes current, then Petitioners have to return to the US embassy and repeat the same process they are going through now to have the visa approved. Clearly, they will be separated for the next several years.

### RESPONDENTS CHERTOFF AND KIESLER.

Petitioners do not oppose the dismissal of Respondents Michael Chertoff and Peter Kiesler for the reasons articulated by Respondents.

**CONCLUSION**

bn			v The Court's Order Granting Petition for Writ of Mandamus should be left undisturbed, as this would allow Respondents to focus their energies in fulfilling its Congressional mandate to adjudicate Petitioner Norgren's visa application.


Dated this 22nd day of October 2007.


_____

Emmanuel Enyinwa, Esq.

Attorney for Petitioners

**PROOF OF SERVICE**

Case No. C-07-5003 TEH

I, the undersigned, hereby certify that on this 15th day of October 2007, one copy of the foregoing RESPONSE TO RESPONDENT'S OBJECTION was served on counsel for Respondents via the district court ECF system which will send notification of such filing to the following ECF filers:

Melanie Proctor

Melanie.Proctor@usdoj.gov

United States Attorney's Office

Elizabeth J. Stevens

Elizabeth.Stevens@usdoj.gov

Department of Justice, Office of Immigration Litigation

In addition, I hereby certify that on this 23rd day of October 2007, a true and correct copy

of the RESPONSE TO RESPONDENT'S OBJECTION was served by e-mail delivery on the following non-ECF filers:

ELIZABETH J. STEVENS

Senior Litigation Counsel

Office of Immigration Litigation

Civil Division

U.S. Department of Justice

Post Office Box 878, Ben Franklin Station

Washington, D.C. 20044

Dated: October 23, 2007                                     _____

Emmanuel Enyinwa, Esq.