IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AKE PETER GERHARD
SVENSBORN and LISA ULRIKA
NORGREN,

          Petitioners,

v.

PETER D. KEISLER, et al.,

          Respondents.

NO. C07-5003 TEH

ORDER VACATING
SEPTEMBER 28, 2007 ORDER
AND DENYING PETITION FOR
WRIT OF MANDAMUS

      This matter came before the Court on Monday, November 5, 2007, for a further hearing on Petitioners' request for a writ of mandamus. On September 28, 2007, the Court granted mandamus relief following a hearing on Petitioners' oral request for a temporary restraining order.[1] In its order, the Court also "recognize[d] that its decision [was] based on papers and oral arguments that [had] been quickly assembled by both Petitioners and Respondents," and the Court therefore invited further briefing should the government continue to oppose the granting of the writ. Sept. 28, 2007 Order Granting Pet'n for Writ of Mandamus at 2.

      The government filed a timely supplemental opposition brief on October 15, 2007, and Petitioners filed a late reply brief on October 23, 2007, which the Court nonetheless reviewed. After carefully considering the parties' written and oral arguments, the record in this case, and relevant law, the Court concludes that its September 28, 2007 order was in error and now VACATES that order and DENIES Petitioners' request for a writ of mandamus.

---

[1] Although styled as a request for a temporary restraining order, Petitioners essentially requested that the Court grant the petition for writ of mandamus. Petitioners did not, for example, request that any action be enjoined pending a motion for preliminary injunction. *See* Civ. L.R. 65-1(c) (discussing form of appropriate temporary restraining orders).

**BACKGROUND**

In May 2006, Petitioner Ake Peter Gerhard Svensborn was notified that his application in the diversity immigration visa lottery program for fiscal year 2007 was selected.[2] In September 2006, he married Petitioner Lisa Ulrika Norgren. As Svensborn's spouse, Norgren was permitted to submit a derivative application for a diversity visa under 8 U.S.C. § 1153(d). Applicants who are selected in the diversity immigration visa lottery program remain eligible to receive a visa only through the end of the fiscal year in which they are selected – in this case, September 30, 2007. 8 U.S.C. § 1154(a)(1)(I)(ii)(II).

Following his marriage to Norgren, Svensborn remained in the United States on a student visa and applied to have his status adjusted to that of lawful permanent resident. The government granted Svensborn's application to adjust his status on May 10, 2007.

Norgren was in the United States only as a visitor, and she returned to Sweden in December 2006. She attended an immigrant visa interview at the United States embassy in Stockholm on August 16, 2007. It is undisputed that she was given a Form OF-194 on that date denying her request for a visa under section 221(g) of the Immigration and Nationality Act ("INA"),[3] but also explaining that the deficiencies in her application might be overcome if she provided additional documentation.

The parties dispute whether Norgren diligently gathered such additional documentation and provided it to the embassy. However, it is not disputed that Norgren's application remains open, and that consular officials remain unsatisfied that Norgren has presented sufficient evidence to establish her eligibility to receive an immigrant visa.

---

[2] Diversity immigrants are provided for by 8 U.S.C. § 1153(c). The diversity immigration visa lottery program is governed by 22 C.F.R. § 42.33.

[3] Section 221(g) provides in relevant part that "[n]o visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." 8 U.S.C. § 1201(g).

2

Petitioners filed this case, seeking declaratory relief and a writ of mandamus to compel adjudication of Norgren's visa application, on September 27, 2007. Petitioners named the following individuals as Respondents: Peter Keisler, Acting Attorney General of the United States[4]; Michael Chertoff, Secretary of the United States Department of Homeland Security; Condoleeza Rice, United States Secretary of State; and Gottlieb Duwan, Vice Consul of the United States embassy in Stockholm.

The parties first appeared before this Court on September 28, 2007, for argument on Petitioners' oral request for a temporary restraining order. At that time, the Court was not convinced by Respondents' argument that the August 16, 2007 decision on Norgren's visa application constituted an unreviewable consular decision, or that it constituted a final adjudication of Norgren's application. Consequently, the Court granted the petition because Norgren would have lacked any means to obtain a diversity visa for the 2007 fiscal year unless the Court ordered that adjudication be completed prior to September 30, 2007. Recognizing that the parties may not have had an opportunity to develop their arguments fully, the Court established a supplemental briefing schedule and set a further hearing on the petition for November 5, 2007, indicating that the Court may vacate its order granting the writ if Respondents ultimately demonstrated the superior position.

**LEGAL STANDARD**

This Court has jurisdiction over mandamus actions "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, mandamus is "an extraordinary remedy," and a writ of mandamus is proper "only when (1) the plaintiff's claim is clear and certain; (2) the defendant official's duty to act is ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994) (internal quotations and citations omitted).

---

[4] Petitioners actually named Alberto Gonzalez as a Respondent. As Gonzalez's successor, Keisler is substituted as a party pursuant to Federal Rule of Civil Procedure 25(d)(1).

3

**DISCUSSION**

As an initial matter, Petitioners agree that Respondents Keisler and Chertoff have no jurisdiction over Norgren's visa application. Accordingly, Respondents Keisler and Chertoff are hereby DISMISSED from this case.

Turning to the remaining Respondents' disputed arguments, the Court first rejects the contention that the September 28, 2007 order impermissibly tolled the statutory deadline. It is undisputed that the Court cannot, regardless of the equities involved, extend the statutory September 30, 2007 deadline by which applicants for diversity immigration visas must receive their visas. *Carrillo-Gonzalez v. I.N.S.*, 353 F.3d 1077, 1079 (9th Cir. 2003). Respondents contend that the September 28, 2007 order granting the writ of mandamus violated this rule because the Court knew that compliance prior to September 30 was unlikely, given that the order was issued on a Friday at 4:00 PM Pacific time, at which time the embassy in Stockholm was already closed until Monday, October 1. Respondents argue that the cases relied on by the Court in which similar orders were issued are distinguishable because, in those cases, the orders were issued with several business days remaining in the fiscal year. *See Przhebelskaya v. U.S. Bureau of Citizenship & Immigration Servs.*, 338 F. Supp. 2d 399, 402 (E.D.N.Y. 2004) (four business days); *Paunescu v. I.N.S.*, 76 F. Supp. 2d 896, 898 (N.D. Ill. 1999) (three business days[5]).

The number of business days remaining in the fiscal year is, however, inapposite. The statute provides that aliens who qualify for diversity immigrant visas through the lottery remain eligible "through the end of the specific fiscal year for which they were selected," not through the end of the close of business, local time, on the last business day remaining in the fiscal year. 8 U.S.C. § 1154(a)(1)(I)(ii)(II). Contrary to Respondents' argument, the Court's September 28, 2007 order was not the equivalent of tolling the statutory deadline because Respondents still had two calendar days in which to comply. Although compliance may have been inconvenient, it was not impossible.

---

[5] The government mistakenly argues that orders in both cases were issued with four business days remaining in the fiscal year.

4

Nonetheless, the Court finds that its September 28, 2007 order improperly granted a writ of mandamus for the reasons set forth below. First, this case is distinct from the other cases in which district courts have ordered that a visa application be adjudicated. Unlike this case, where there is no dispute that Norgren's application was refused under section 221(g), there was no indication in those cases that the consular officials had made any decision at all. *Przhebelskaya*, 338 F. Supp. 2d at 402 (noting that "the Agency still had not adjudicated the applications because the FBI had failed to complete [a] background check"); *Paunescu v. I.N.S.*, 76 F. Supp. 2d at 898 (indicating that no decision had been made on petitioner's application because of the failure of the FBI to process a fingerprint check); *Kobzev v. I.N.S.*, Case No. 00 C 4576, 2001 WL 12011, at *1 (N.D. Ill. Jan. 4, 2001) (noting that a writ of mandamus was granted because "the INS had still not adjudicated Kobzev's application").

The only case that has addressed whether a court can review a decision by a consular official to refuse a visa application under section 221(g) appears to be *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1998). In that case, an alien wife applied for a visa based on her marriage to a naturalized citizen. While her application was pending, denaturalization proceedings were begun against the husband, and a consular official subsequently issued a letter explaining that the wife's "'application is refused' until the denaturalization proceedings had been completed and [the applicant's] eligibility to petition had been firmly established." *Id.* at 931. The letter stated that the application was denied under section 221(g) but did not comply with regulations requiring the denial to be "on a form prescribed by the Department" and to state statutory provisions under which administrative relief is available.[6] *Id.* at 932. The Ninth Circuit further explained that the denial was "not a final decision. As respondents' counsel admitted during oral argument, the consulate is holding the visa applications in abeyance." *Id.* The court held that, based on these deficiencies, the consulate's letter was "not a refusal within the meaning of 22 C.F.R. § 42.81." *Id.* The court distinguished the Patels' situation from the scenario, contemplated by the regulations, in

---

[6] Petitioners here do not argue that the refusal of Norgren's visa application failed to comply with these technical regulations. Petitioners' only assertion is that the refusal was not a final adjudication of Norgren's application.

5

1 which an applicant indicated an intent to submit additional evidence where such evidence
2 may overcome the stated grounds of ineligibility.  *Id.* at n.2 (discussing provisions for
3 reconsideration under 22 C.F.R. §§ 42.81(b) and (e)).

4       Petitioners argue that *Patel* requires this Court to find that all refusals under section
5 221(g) are impermissible temporary refusals, but the Court does not find Petitioners'
6 argument persuasive.  Unlike in the present case, the government in *Patel* admitted that it
7 was holding the visa application in abeyance – i.e., that it refused to make a decision – until
8 after the denaturalization proceedings had concluded.  Here, by contrast, the government
9 asserts that it did make a decision by refusing Norgren's visa application for lack of adequate
10 documentation under section 221(g); in fact, it is undisputed that Norgren received a form
11 OF-194 refusing her visa application because she was found to be ineligible.  Thus, this case
12 and *Patel* arise under very different facts, and this Court does not interpret *Patel* as a binding
13 decision that all refusals under section 221(g), regardless of the factual circumstances, are not
14 final for purposes of determining whether a writ of mandamus should issue.

15       Moreover, since *Patel* was decided, the governing regulations have been modified.
16 They now explicitly provide that a consular official may fulfill his duty to issue or refuse to
17 issue a visa by refusing the visa under section 221(g): "When a visa application has been
18 properly completed and executed before a consular officer in accordance with the provisions
19 of INA and the implementing regulations, *the consular officer must either issue or refuse the*
20 *visa under INA 212(a) or INA 221(g) or other applicable law*."  22 C.F.R. § 42.81(a)
21 (emphasis added); *see* 66 Fed. Reg. 10363-64 (Feb. 15, 2001) (noting amendment).  This is
22 precisely what the consular officials did in Norgren's case.

23       Although Norgren's visa application remains under review, the regulations provide for
24 such reconsideration where, as here, the applicant provides "further evidence tending to
25 overcome the ground of ineligibility on which the refusal was based" within one year from
26 the date of refusal.  22 C.F.R. § 42.81(e); *see also* 22 C.F.R. § 42.81(b).  Petitioners have
27 failed to convince the Court that the ongoing review of Norgren's application is not properly
28 construed as part of this reconsideration process, rather than as an indication that no decision

6

1 has yet been reached on the application. Indeed, it is undisputed that Norgren received a
2 Form OF-194 stating that she was found ineligible to receive a visa.
3  In short, the Court concludes that the refusal of Norgren's visa application under
4 section 221(g) complied with the consular officer's duty under 22 C.F.R. § 42.81(a) to issue
5 or refuse the visa. Petitioners have failed to cite any authority for the proposition that any
6 other duty was owed by Respondents to Norgren, and there is thus no basis on which this
7 Court could grant relief to Petitioners.

**CONCLUSION**

For the reasons discussed above, the Court concludes that no writ of mandamus or any other relief should issue in this case. It is undisputed that Norgren's visa application was refused under section 221(g). This refusal satisfied the duty owed to Norgren under 22 C.F.R. § 42.81(a) – namely, to "issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law" – and Petitioners have pointed to no authority imposing on Respondents any other duty, such as a duty that reconsideration also be completed before the end of the fiscal year or that Norgren's application be approved. Consequently, there is no outstanding duty that a writ of mandamus could compel Respondents to perform. The Court's September 28, 2007 Order Granting Petition for Writ of Mandamus is therefore VACATED, and the petition for writ of mandamus is DENIED in its entirety.[7] The Clerk shall enter judgment against Petitioners in favor of Respondents and close the file.

**IT IS SO ORDERED.**

Dated:  11/07/07

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

---

[7] This Court wholeheartedly agrees with other courts that have noted the inequities that may result from the September 30 cut-off date for the diversity immigration visa program. *E.g., Coraggioso v. Ashcroft*, 355 F.3d 730, 734-35 (3d Cir. 2004); *Gebre v. Rice*, 462 F. Supp. 2d 186, 191-92 (D. Mass. 2006). However, such inequities do not provide this Court with the authority to grant Petitioners the relief they seek.

7